IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Walker D. Miller

Civil Action No. 06-CV-02194-WDM-MJW

MARY ANN BOGNER,

    Plaintiff,

v.

LIBERTY LIFE ASSURANCE COMPANY, *et al.*,

    Defendants.

---

**ORDER ON MOTION FOR JUDGMENT ON THE MERITS UNDER ERISA,
CROSS-MOTION FOR SUMMARY JUDGMENT, AND
MOTION FOR LEAVE TO FILE THIRD PARTY COMPLAINT**

---

Miller, J.

This matter is before me on Plaintiff Bogner's Motion for Judgment on the Merits under ERISA (Docket No. 42), Defendant Liberty Life Assurance Company's ("Liberty") Cross Motion for Summary Judgment (Docket No. 46), and Liberty's Motion for Leave to File a Third Party Complaint (Docket No. 71). After a review of the pleadings and the parties' written arguments, I conclude oral argument is not required. For the reasons that follow, the motion for judgment on the merits under ERISA (Docket No. 42) shall be denied, the motion for summary judgment shall be granted, and the motion to file a third-party complaint shall be denied as moot.

## Background

This appeal of a denial of disability benefits under Employee Retirement and Income Security Act ("ERISA") was originally filed by Bogner against three defendants:

Liberty, Land O'Lakes, Inc., ("Land O'Lakes") and Land O'Lakes Disability Insurance Plan (the "Plan").  Pursuant to a settlement between Bogner and Land O'Lakes and the Plan (the "Land O'Lakes Defendants"), however, the Land O'Lakes Defendants were dismissed from the lawsuit in January 2008.  Therefore, the appeal remains pending only as to Liberty.

In this case, Bogner claims to be entitled to long term disability ("LTD") benefits under the Plan, based on a number of conditions including "cervical spine disc dysfunctions and cervical radiculopathy; lumbar spine disc bulging and chronic lumbar syndrome with lower extremity radicular symptoms; right shoulder syndrome; post-operative debilitating and chronic vertigo; ongoing myofascial pain; upper extremity paresthesias; thoracic outlet syndrome affecting primarily the right upper extremity; complicated interactions of pain and numbness, loss of concentration, focus, and responsiveness, restricted motion, and vertigo; and the related impacts of necessary medicines and loss of a capacity to engage in ususal activities."  (Compl. ¶ 36.)   Land O'Lakes, Bogner's employer, was the policyholder and plan sponsor for the Plan.  Liberty issued the Plan and acted as the claims administrator for the Plan at all times relevant to this appeal.  There is no dispute that Bogner was eligible to participate in and was insured under the Plan.  There is also no dispute that, should Bogner be found eligible for benefits in accordance with the terms of the Plan, Liberty would be liable for payment of benefits.

Bogner was employed by Land O'Lakes as an assistant credit manager until January 7, 2003 when she claims to have become disabled.  At that time, based on the worsening of a variety of conditions including vertigo, Bogner stopped working and

submitted a claim for short term disability ("STD") benefits. Liberty approved STD benefits beginning on January 15, 2003 but determined that benefits were no longer available on March 21, 2003.[1] (Admin. R. at 762–63.) Bogner then sought LTD benefits. In response, Liberty referred Bogner's file to a consulting physician, Dr. Elizabeth Gallup. Dr. Gallup reviewed the medical record and submitted a report to Liberty concluding that there was "insufficient evidence of impairment that precludes work of a sedentary nature." *Id.* at 374. On July 30, 2003, Liberty informed Bogner that it was denying her claim for LTD benefits, stating that there was "insufficient evidence" that Bogner was unable to engage sedentary work and, therefore, concluding that Bogner was "able to perform the substantial duties of" her occupation. *Id.* at 369–71.

Bogner appealed the denial of benefits[2] and Liberty undertook further administrative review of her claim. *See id.* at 185–87, 229–41. Liberty sent all medical records, including medical records submitted for the appeal, to a different consulting physician, Dr. John Holbrook. Dr. Holbrook reviewed all the medical records and submitted a report to Liberty indicating that "[g]iven the inconsistency in [sic] contradictory evidence in file, impairment, restrictions and limitations are uncertain." *Id.* at 232. By letter dated November 24, 2003, Liberty notified Bogner that it was upholding its decision to deny LTD benefits stating that "[a]lthough you may continue to experience some symptoms, the medical documentation does not support limitations

---

[1] Bogner alleges that the STD benefits were restored as of March 26, 2003, but the cite the administrative record does not reflect such restoration.

[2] Actually, Bogner's treating physician, Dr. Bennett I. Machanic, sent a letter to Liberty indicating that Bogner suffered from additional conditions. Liberty construed this as a request for appeal on Bogner's behalf and instituted the appeal procedure.

3

preventing you from performing the material and substantial duties of your occupation."
*Id.* at 152–168.  Liberty avers that it based this decision on the entire medical record including the additional medical evidence submitted by Bogner and her treating physicians for the appeal and the opinions of Drs. Gallup and Holbrook.

Notably, in August 2004—after Liberty denied Bogner's appeal, the Social Security Administration determined that Bogner was totally disabled as of January 6, 2003 and entitled to disability benefits.  On October 15, 2004 Land O'Lakes entered into an agreement with Bogner for her separate discrimination claim against Land O'Lakes.  The agreement stated "Land O'Lakes agrees to undertake a third-party review of Bogner's long-term disability claim with Liberty Mutual at its sole expense, and Bogner agrees to provide written authorization to Liberty Mutual to release her claim file to Land O'Lakes and/or its designated third-party reviewer for this purpose."  (Admin. R. at 775.)  Pursuant to the further review undertaken by Land O'Lakes, Liberty released Bogner's claim file to Land O'Lakes on November 16, 2004.  *Id.* at 1471.  Bogner claims that the further review merely "consisted of an ambiguous letter from an out-of-state physician who saw some health care records and never evaluated Mary Ann Bogner."  (Docket No. 58 at 11.)

On August 29, 2005 Bogner sought further review and appeal of her claim for LTD benefits with Liberty.  Liberty refused stating that Bogner's "administrative right to review has been exhausted and no further review will be conducted."  Bogner supplemented the administrative record on September 25, 2005, September 27, 2005, December 29, 2005, January 27, 2006, April 21, 2006, and June 9, 2006.  Liberty responded to these submissions by notifying Bogner that she had previously been

provided a full and fair review including an appeal and that her file would remain closed. On September 29, 2006, Bogner appealed Liberty's decision to deny LTD benefits pursuant to 29 U.S.C. § 1132 in state court. Liberty removed the case to federal court on November 1, 2006. Thereafter, Bogner settled her claim with Land O'Lakes on January 15, 2008.

## Standard of Review

Generally, a denial of benefits covered by ERISA "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If, however, "the benefit plan gives discretion to a plan administrator, then a decision denying benefits is typically reviewed under an arbitrary and capricious standard." *Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.*, 491 F.3d 1180, 1189 (10th Cir. 2007) (citing *Fought v. UNUM Life Ins. Co. of Am.*, 379 F.3d 997, 1003 (10th Cir. 2004)). Under such standard, review is "'limited to determining whether [the plan administrator's] interpretation was reasonable and made in good faith.'" *Fought*, 379 F.3d at 1003 (alteration in original) (quoting *Hickman v. GEM Ins. Co.*, 299 F.3d 1208, 1213 (10th Cir. 2002)). "In fact, there is no requirement that the basis relied upon be the only logical one or even the superlative one." *Adamson v. UNUM Life Ins. Co. of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006). "'The decision will be upheld unless it is not grounded on *any* reasonable basis. The reviewing court need only assure that the administrator's decision falls somewhere on a continuum of reasonableness—even if on the low end.'" *Nance v. Sun Life Assurance Co. of Canada*, 294 F.3d 1263, 1269 (10th Cir. 2002)

(quoting *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098 (10th Cir. 1999)). Furthermore, review is limited to the administrative record—"the materials complied by the administrator in the course of making his decision." *Id.*

"The possibility of an administrator operating under a conflict of interest, however, changes that analysis." *Id.* Indeed, the Supreme Court has determined that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" *Firestone*, 379 F.3d at 115 (citing Restatement (Second) of Trusts § 187, Comment d (1959)). To comply with this directive, the Tenth Circuit uses a "sliding scale" approach where "the reviewing court will always apply an arbitrary and capricious standard, but the court must decrease the level of deference given to the conflicted administrator's decision in proportion to the seriousness of the conflict." *Fought*, 379 F.3d at 1004 (citing *Chambers v. Family Health Plan Corp.*, 100 F.3d 818, 825 (10th Cir. 1996)).

Essentially, there are two conflict of interest scenarios that may apply to an ERISA appeal. *Id.* at 1005–06. First, where there is a "standard" conflict of interest because the fiduciary "wear[s] two hats, one of trustee or fiduciary and one of a settlor", the plaintiff is required to prove the conflict of interest. *Id.* at 1005. If the plaintiff cannot prove that "the plan administrator's dual role jeopardized his impartiality", then the reviewing court must only "consider defendant's standard conflict of interest as one factor in determining whether defendant's denial of disability benefits to plaintiff was arbitrary and capricious." *Id.* If, however, the Plaintiff can prove a conflict of interest, then the standard of review is the same as that for an "inherent" conflict of interest,

6

discussed below.  *Id.* at 1005–06.

Second, where there is an "inherent" conflict of interest (*i.e.*, when the insurer also acts as the claims or plan administrator, see *DeGrado v. Jefferson Pilot Fin. Ins. Co.*, 451 F.3d 1161, 1167 (10th Cir. 2006)), a proven conflict of interest, or where a serious procedural irregularity exists, there is an additional reduction in deference. *Fought*, 379 F.3d at 1006.  In this situation, the burden shifts to the plan administrator to prove "the reasonableness of its decision pursuant to this court's traditional arbitrary and capricious standard."  *Id.* at 1006.  Under this standard:

> [T]he plan administrator must demonstrate that its interpretation of the terms of the plan is reasonable and that its application of those terms to the claimant is supported by substantial evidence.  The district court must take a hard look at the evidence and arguments presented to the plan administrator to ensure that the decision was a reasoned application of the terms of the plan to the particular case, untainted by the conflict of interest.

*Id.*

In this case, there is no dispute that the Plan provides discretionary authority to Liberty.  (*See* Docket Nos. 58 at 8, 47 at 9.)  Indeed, the Plan provides: "Liberty shall possess the authority to construe the terms of this policy and to determine benefit eligibility hereunder." (Admin. R. at 33.)  Furthermore, the parties have stipulated that Liberty was acting under an inherent conflict of interest as it served as both the insurer and the claims administrator.[3]  (*See* Stipulated Facts, Scheduling Order, Docket No. 20

---

[3] There is some indication that the mere fact that an insurer acted as the administrator does not "on its own warrant a further reduction in deference" as observations of the existence of an inherent conflict of interest when an insurer also serves as the plan administrator were "never meant to be an *ipso facto* conclusive presumption to be applied without regard to the facts of the case." *Adamson*, 455 F.3d at 1212–13.  Rather, the claimant "must identify a conflict of interest that could plausibly jeopardize the plan administrator's impartiality." *Id.* at 1213.  In this case, however, the

7

¶¶ 5, 14.)  Therefore, the arbitrary and capricious standard of review applies to this appeal and Liberty bears the burden of demonstrating that its actions were reasonable and supported by substantial evidence.  *See Fought*, 379 F.3d at 1006.

## Discussion

As a preliminary matter, I must determine whether to consider evidence submitted after November 24, 2003—the date that Liberty resolved Bogner's appeal of the denial of benefits.  Bogner submitted medical evidence to Liberty and this Court that postdates the November 23, 2003 decision on appeal and that Liberty, therefore, did not consider in either the initial denial or the administrative appeal.  Without providing any legal support, Bogner argues that I should consider this evidence as either additional evidence of Bogner's medical status or as a summary of the medical evidence that was considered by Liberty.  Liberty argues that the evidence cannot be considered as the only relevant evidence is that which was before Liberty when it made its final decision on Bogner's appeal.  I agree with Liberty.

Tenth Circuit authority is clear that "[i]n determining whether the plan administrator's decision was arbitrary and capricious, the district court generally may consider only the arguments and evidence before the administrator at the time it made that decision."  *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 380 (10th Cir. 1992) (citations omitted); *accord DeGrado*, 451 F.3d 1161, 1169 (10th Cir. 2006) ("'In

---

parties appear to agree that a reduction in deference is in order given Liberty's dual role as a insurer and administrator.  (*See* Docket Nos. 47 at 10, 58 at 9.)  Furthermore, as I conclude that Liberty has met its burden under the less deferential standard applied when there is an inherent or proven conflict of interest, I need not determine whether Bogner demonstrated possible impartiality.

reviewing a plan administrator's decision under the arbitrary and capricious standard, we are limited to the administrative record—the materials complied by the administrator in the course of making [its] decision.'" (alteration in original) (quotation and citations omitted)); *Nance*, 294 F.3d at 1269–70 (declining to consider material submitted to the insurer after the date of the final appeal decision). Therefore, unless Liberty "acted in an arbitrary and capricious manner by refusing to reopen [Bogner's] claim to consider additional factual submissions", review is limited to materials provided prior to November 24, 2003. *Nance*, 294 F.3d at 1269.

In this case, I conclude that Liberty's decision not to reopen the case after it resolved Bogner's appeal in November 2003 was not arbitrary and capricious. ERISA does not require Liberty to engage in any further review of Bogner's claims after the appeal was resolved. *See* 29 U.S.C. § 1333 (requiring that all plans "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim"). Bogner argues that Liberty was required to reopen the claim based on Land O'Lakes's promise to engage in "further review with Liberty". I conclude, however, that Liberty was not obligated to reopen Bogner's claim based on this promise as Liberty was not a party to this agreement and any third-party review that Land O'Lakes promised to Bogner was the sole responsibility of Land O'Lakes. Although the language of the promise states that Land O'Lakes would engage in "further review *with* Liberty", it does not promise any direct action by Liberty. In fact, the promise indicates that Land O'Lakes would engage in further review "at its sole expense." Liberty's only action with regard to Land O'Lakes's further review was to release Bogner's file to Land

9

O'Lakes pursuant to a request by Land O'Lakes. This action is insufficient to indicate that Liberty was an active participant in the "further review" promised by Land O'Lakes. Additionally, Bogner herself admits that the much of the supplemental medical evidence she submitted simply served to summarize the medical evidence that is contained elsewhere in the administrative record.[4] Therefore, in determining if Liberty acted in an arbitrary and capricious manner in denying Bogner's claim for LTD benefits, I will look only to the evidence that was before Liberty at the time it made its final decision on appeal on November 24, 2003.

First, Bogner argues that Liberty acted in an arbitrary and capricious manner because its decision to deny her LTD benefits is not supported by substantial evidence. Specifically, Bogner argues that Liberty failed to obtain an independent medical examination ("IME"), failed to consider the award of social security disability insurance ("SSDI") benefits, allowed its conflict of interest to impede its impartiality, and "cherry-picked" the evidence to support its denial. Liberty responds by arguing that its decision was substantially supported by the administrative record at the time the decision to deny benefits was made.

A claims administrator acts in an arbitrary and capricious manner when its decision is not supported by substantial evidence. *Adamson*, 455 F.3d at 1212 ("A lack of substantial evidence often indicates an arbitrary and capricious decision."); *see Sandoval*, 967 F.2d at 382. "Substantial evidence is of the sort that a reasonable mind

---

[4] Bogner generally alleges that the decision not to reopen her claim was arbitrary and capricious because there was additional medical evidence that should be considered, but she presents no legal authority or entitlement to reopening based on new evidence.

could accept as sufficient to support a conclusion." *Adamson*, 455 F.3d at 1212. It is "more than a scintilla, of course, yet less than a preponderance." *Id.* (citing *Sandoval*, 967 F.2d at 382).

Bogner claims that she is disabled "primarily due to debilitating vertigo that developed post-operatively from a cervical disc fusion in August 2001, cervical radiculopathy, right upper extremity pain and numbness, and other neck and head pain." (Docket No. 58 at 9.) Liberty argues that the medical evidence on record indicates that Bogner was not disabled as the term is defined in the policy.[5] Liberty provides citations to many places in the record supporting its conclusion that Bogner was not disabled. Dr. Machanic's records demonstrated that Bogner was able to sit without restrictions; could push, pull, reach, and grasp and do repetitive motions with her wrist, elbow, shoulder, and ankle up to one third of the time; and could lift up to twenty pounds up to one third of the time. Dr. Gallup, the consulting physician for the initial claim, determined that the daily activities that Bogner indicated she was capable of performing were analogous to those of a credit assistant, Bogner's prior job with Land O'Lakes. Dr. Gallup also indicated that Bogner failed to follow up with her treating physician regarding her complaints of dizziness, which is "inconsistent with a debilitating condition of dizziness." (Admin. R. at 375.) Dr. Holbrook, the consulting physician for

---

[5] The policy provides that for persons other than pilots, co-pilots, and crewmembers of an aircraft, "Disability" or "Disabled" means that "the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation" during the "Elimination Period" plus some additional specified time period and "thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation." (Admin. R. at 6.)

11

the appeal, indicated that Bogner's medical record was inconsistent and at times contradictory. *Id.* at 232. He also concluded that the majority of Bogner's tests for vertigo were negative and that the majority of Bogner's incapacitating symptoms were self-reported. *Id.* at 234. After considering additional evidence provided by Bogner, Dr. Holbrook again concluded that Bogner was not disabled, specifically finding that Bogner's cervical radiculopathy appeared to be a new condition as it was not reported prior to July 9, 2003.[6] *Id.* at 185.

After taking a "hard look", *see Fought*, 379 F.3d at 1006, at the evidence in the administrative record including reports by Drs. Holbrook, Gallup, Machanic, Foster, and Parker, physical therapy reports, and various other medical evidence submitted by Bogner, I conclude that Liberty's decision to deny LTD benefits was supported by substantial evidence on the record. Although there are instances in the administrative record that lend support to a finding of total disability such as Dr. Machanic's August 12, 2003 letter opining that Bogner was completely unable to work (*see id.* at 284), there is also substantial evidence supporting Liberty's determination that Bogner was not disabled. I note, just as Dr. Holbrook did, that the majority of instances reporting debilitating symptoms were self reports by Bogner herself or a recitation of Bogner's self reports by a physician. *See, e.g.*, *id.* at 268–78, 272–75, 290, 298, 304, 424, 434,

---

[6] Although it is less than clear exactly what significance the date July 9, 2003 has relating to Bogner's claim for LTD benefits, it appears that to be eligible for benefits pursuant to the policy, Bogner must have, at least, become disabled by July 9, 2003, the end of the "Elimination Period", which occurs 180 days after Bogner's claimed onset of disability. (*See* Admin. R. at 174–75.) However, there is also indication that Bogner must have been disabled from the date she claims to have become disabled, January 7, 2003. *See id.* I also note that 180 days from the date Bogner claims to have become disabled is July 6, 2003, not July 9, 2003.

467–68. Although there was evidence in the record indicating the presence of medical conditions; *see, e.g.*, *id.* at 222 ("This does suggest the possibility that the patient does have a cervical problem of significance"), 321 (indicating examination was "remarkable for C6 and sensory changes), 323 ("sever recurrent rt upper extremity radiculopathy"), 412 (suggesting central vestibular pathology); there was also substantial objective medical evidence supporting a conclusion that Bogner was not completely disabled, *see, e.g.*, *id.* at 293 (indicating Electromyogram found normal except for on isolated abnormality), 327 (indicating EMG revealed "no evidence of significant ongoing nerve compression"), 447 (indicating normal EEG, MRI, and blood studies), 456 (Dr. Machanic's functional capacity form indicating that Bogner retained the ability to do sedentary activities). I also note that Dr. Holbrook was correct in noting that the objective medical evidence is somewhat contradictory. (*Compare* Admin. R. at 285 (normal EMG), 287 (Dr. Machanic's report that "[t]here is no indication of cervical radicular dysfunction, peripheral compressive neuropathy, or thoracic outlet syndrome), 300 (Dr. Foster's report that Romberg test was likely positive only due to voluntary action), 303 (ENG resulted in no evidence of peripheral vestibular lesion or of a spontaneous or position nystagmus), 412 (no spontaneous or gaze nystagmus), *with id.* at 284 (Dr. Machanic's opinion letter indicating total disability based on, *inter alia*, cervical spondylosis, numbness of both arms, vertigo, gait imbalance, signs to suggest thoracic outlet syndrome), 295 (indicating a question of vertigo); *see id.* at 301 (indicating fluctuating ENG findings), 311 ( "brief episode of down beating nystagmus"), 435 (nystagmoid jerking eye movements), 436 (positive Romberg).) I also note that the Job Evaluation Form for Bogner's former position at Land O'Lakes, *see id.* at 470–71,

13

indicates that, as an assistant credit manager, Bogner would only be required to engage in activities that she was able to do as indicated by Dr. Machanic's functional evaluation, *see id.* at 456. Therefore, based on all of the foregoing including Liberty's citation to the record, I conclude that Liberty has sustained its burden under the reduced deference arbitrary and capricious standard to demonstrate that its decision to deny LTD benefits to Bogner was based on substantial evidence on the record.

Furthermore, I do not agree with Bogner that Liberty failed to consider certain impairments such as her arm numbness, other cervical difficulties and thoracic outlet syndrome. Both Dr. Holbrook's report as well as the November 24, 2003 denial letter provided a thorough review of all of the medical evidence presented to Liberty including Bogner's upper extremity numbness (Admin. R. at 176, 233), other cervical issues, *id.* at 175–76, 185–86, 235, and thoracic outlet syndrome, *id.* at 178, 185–86, 235. I also note that Liberty was not required to obtain an independent medical evaluation during the appeal. Although such evaluations are helpful, they are not required to be obtained on appeal by an administrator. *See Fought*, 379 F.3d at 1015. Furthermore, Liberty did seek the expert advice of two different consultative physicians, Drs. Gallup and Holbrook, thereby demonstrating a "thorough investigation." *Id.* ("'Seeking independent expert advice is evidence of a thorough investigation.'" (quoting *Hightsue v. AIG Life Ins. Co.*, 135 F.3d 1144, 1148 (7th Cir. 1998))). Finally, as discussed *supra*, I cannot consider the Social Security Administration's decision regarding SSDI benefits because it was submitted after the November 23, 2003 and, therefore, was not before Liberty when it made its final decision on appeal.

Bogner also argues that Liberty denied her a full and fair review of her claim

14

because it did not provide her with the opportunity to comment on Dr. Holbrook's reviewing opinion, which was commissioned for the appeal, prior to the final decision on the appeal.[7] This argument, however, is contrary to Tenth Circuit authority determining that a consulting report during an appeal is not required to be submitted to the claimant prior to a final decision on appeal. *See Metzger v. UNUM Life Ins. Co. of Am.*, 476 F.3d 1161, 1167 (10th Cir. 2007). In *Metzger*, the Tenth Circuit determined that the statute and relevant federal regulations do "not require a plan administrator to provide a claimant with access to the medical opinion reports of appeal-level reviewers prior to a final decision on appeal." *Id.* "Instead, the regulations mandate provision of relevant documents, including medical opinion reports, at two discrete stages of the administrative process." *Id.* First, the claim file must be disclosed "prior to or at the outset of an administrative appeal." *Id.* Second, any documents generated during the administrative appeal and the initial claim file must be disclosed after a final decision on appeal. *Id.* Indeed, "[s]o long as appeal-level reports analyze evidence already known to the claimant and contain no new factual information or novel diagnoses, this two-phase disclosure is consistent with 'full and fair review.'" *Id.*

In this case, there is no dispute that Bogner was provided with her case file prior to Liberty's final decision on appeal. I note that although Dr. Holbrook opined in his addendum that the findings of cervical radiculopathy appeared to be new findings, this does not constitute new factual information or novel diagnoses such that Bogner must have been provided the opportunity to review and respond to Dr. Holbrook's report. Dr.

---

[7] I note that prior to Liberty's final decision on appeal, Bogner was provided with a full copy of her claim file. (*see* Admin. R. at 261–62.)

15

Holbrook simply made the same determination that Dr. Gallup did in the initial review—that Bogner was not totally disabled. In support. Dr. Holbrook relied on information which Bogner herself had submitted and which had been the basis of the initial denial. I also note that the issue of cervical radiculopathy was raised prior to Dr. Holbrook's assessment of it as it was addressed at least by Dr. Machanic in July 2003 and Dr. Tsamasfyros in February 2003. Therefore, I conclude that Liberty was not required to disclose Dr. Holbrook's report to Bogner prior to its final decision on appeal.

Finally, Bogner argues that Liberty failed to provide her with the "further review" promised by Land O'Lakes. Liberty responds that it was not obligated to provide any additional review by the agreement between Land O'Lakes and Bogner. As discussed *supra*, I agree with Liberty and conclude that the promise of "further review" was undertaken solely by Land O'Lakes and not binding on Liberty.

Accordingly, it is ordered:

1. Plaintiff's Motion for Judgment on the Merits Under ERISA (Docket No. 42) is denied.
2. Defendant's Cross Motion for Summary Judgment (Docket No. 46) is granted.
3. Plaintiff's appeal and this case are dismissed with prejudice.
4. Defendant's Motion for Leave to File a Third Party Complaint (Docket No. 71) is denied as moot.

DATED at Denver, Colorado, on September 26, 2008.

BY THE COURT:

s/ Walker D. Miller
United States Senior District Judge